[S. F. No. 16579. In Bank.—Oct. 3, 1941.]

P. G. ALLEN et al., Respondents, v. HOWARD M. McKIN-
LEY et al., Appellants.

John J. O'Toole, City Attorney, Thomas P. Slevin and Norman Sanford Wolff, Deputies City Attorney, and L. R. Bunney for Appellants.

Grover O'Connor for Respondents.

Loren A. Butts and Arthur Lasher, as *Amici Curiae*, on behalf of Respondents.

THE COURT.—The appeal in this case was originally heard by the First District Court of Appeal, Division One. Following a decision by that court, a petition for hearing by this court was granted. Consideration of the cause leads us to the conclusion that the appeal was correctly decided by the District Court of Appeal. Its opinion rendered therein, which was prepared by Mr. Presiding Justice Peters, is there-

fore adopted as the opinion of this court herein. It is as follows:

"This is an appeal by the Civil Service Commission of San Francisco, its secretary, and its personnel director, from a judgment directing the issuance of a writ of *mandamus* commanding the appellants to hold a promotional examination, instead of an open one, for the purpose of creating an eligible list for positions in the civil service of San Francisco in the tax collector's office designated as Adjuster, Class G153. The proceeding was instituted in the trial court by respondents, who are eighteen employees in the office of the Tax Collector in San Francisco, after the civil service commission had given notice of an open and original examination to establish an eligible list for the positions in question. It is the theory of these respondents, upheld by the trial court, that, under the appropriate charter provisions, they, as employees lower in rank to that of Adjuster, G153, as well as others in the civil service, are legally entitled to take a promotional examination to fill that position, and that the action of the commission in ordering an open examination, under the circumstances here involved, constituted an abuse of discretion.

"The case was decided upon the petition of respondents and the answer and certain amendments to the answer. Based upon these pleadings, the trial court granted the motion of petitioners for judgment on the pleadings.

"In support of the judgment the respondents first urge that the record shows that many of them entered the employ of the city and county of San Francisco under civil service prior to January 8, 1932, the effective date of the present charter, and that, under the old charter, the right to a promotional examination was secured to them by section 8, article XIII, of that charter, and that section 142 of the new charter preserves this right. Section 142 of the new charter provides, in part, that: 'The civil service rights, acquired by persons under the provisions of the charter superseded by this charter, shall continue under this charter'.

"The old charter (sec. 8, art. XIII) in reference to promotions provided: 'The Commissioners shall provide for promotion in the classified service on the basis of ascertained merit and standing upon examination; and shall provide, wherever practicable, that vacancies shall be filled by pro-

motion. All examinations for promotions shall be competitive among such members of the next lower rank, as established by the Commissioners, as desire to submit themselves to such examinations.'

"The comparable provision of the new charter is section 146, which provides as follows: 'Whenever it deems it to be practicable, the Commission shall provide for promotion in the service on the basis of such examinations and tests as the Commission may deem appropriate, and shall, in addition, give consideration to ascertained merit and records of city and county service of applicants. The Commission shall announce in the examination scope circular the next lower rank or ranks from which the promotion may be made. All promotions in the police and fire departments, respectively, shall be made from the next lower rank on the basis of examinations and tests, seniority of service and meritorious public service being considered.'

■ "Appellants urge that, if the old charter conferred greater rights than the new, section 142 of the new charter, *supra,* does not operate to preserve such an inchoate right as the right to a promotional examination, but only preserves vested or already acquired rights. We do not find it necessary to pass upon this point for the reason that we are of the opinion that, whether the old or new charter measures the rights of respondents, under both provisions it is the duty of the Commission to hold promotional examinations when 'practicable'. While the language employed in the two sections is not identical, and, while the new charter expressly provides that, when the *Commission* deems it practicable it shall provide for promotional examinations, whereas the old charter provided that 'wherever practicable' such examination must be given, it seems quite clear that the two sections should be construed to mean substantially the same thing— that is, that under the old section, as under the new, the question as to whether a promotional examination is practicable, is confided to the limited discretion of the Commission. Sound principles of administrative law, as well as the provisions of the statute, compel the conclusion that it is only when it appears that such limited discretion has been abused that the courts are warranted in interfering.

■ "There can be but little doubt that, under the facts alleged in the petition and admitted by appellants, an abuse of discretion appears.

"In 1932 the Commission established, in the Tax Collector's office, a class of employment designated as License Adjuster, Class G152. On March 23, 1932, the Commission, pursuant to an examination theretofore held, created an eligible list for that position. The names of seven of the eighteen respondents were on that list. On April 8, 1932, M. J. Lawley (who was first on that list with a grade of 100 per cent) and I. A. Richardson (who was second on that list with a grade of 98 per cent) were appointed from that list as License Adjusters. On October 3, 1934, two other appointments were made from the eligible list to that position—Charles A. Burgess and Eugene Sheehy—who had grades of 87½ per cent. These last two men were ranked as numbers 10 and 10½ on the eligible list, ranking below five of the petitioners on the eligible list. Why the appointments were made of people so low on the eligible list does not appear. At that time, Sheehy, as well as several of the respondents, were employed in the Tax Collector's office as General Clerk, Class B222.

"On March 23, 1936, the eligible list for License Adjuster, Class G152, expired automatically. At that time all but five of the respondents were General Clerks, Class B222, in the Tax Collector's office. Many of them had been so employed for many years. Of the five who were not so employed on that date, one of them, P. G. Allen, first entered the employ of the city for the Tax Collector's office in 1915 as Deputy Tax Collector. Subsequently, his position was classified as that of General Clerk, while still later he was appointed as Teller. The four other respondents were appointed General Clerks, B222, subsequent to March 23, 1936. Several of the respondents, from time to time, had been assigned to the bureaus in the Tax Collector's office known as the Bureau of Delinquent Revenue and the Bureau of Licenses.

"After the expiration of the eligible list for License Adjuster, G152, in March of 1936, nothing was done to create a new eligible list for that position. Prior to June 1, 1938, there existed a vacancy in the Tax Collector's office in the classified position of General Clerk, Class B222. This general clerkship carried a monthly salary of $200. Other general clerkships in the same class carried lower salaries, and many of these lower salaried clerkships were held by the respondents. Instead of transferring one of the petitioners

who was already in Class B222 to the vacant higher paid clerkship of the same class, the Commission proceeded in a different manner. By resolution of June 1, 1938, it abolished the class of License Adjuster, G152, and created a new class—Adjuster, G153. It further provided that persons theretofore holding the positions in Class G152 should be entitled, without examination, to hold positions in the new class, G153. The only persons thus entitled to be appointed to the new class of Adjuster, G153, were Lawley, Burgess and Sheehy, heretofore mentioned. What had happened to Richardson who had been appointed with Lawley in 1932 to the position of License Adjuster, G152, does not appear. Apparently, he was no longer employed in that position. Accordingly, Lawley, Burgess and Sheehy were automatically given positions in the new class, G153.

"By the same resolution of June 1, 1938, the Commission created a new class—Senior Inspector of Licenses, Class G154, with the further provision that this class should be deemed promotional from the newly created class, G153. The resolution also provided that the vacant position of General Clerk, B222, should be allocated to the newly created class of Adjuster, G153. Thereafter, Lawley was given an emergency appointment to the newly created position of Senior Inspector of Licenses, and one Connolly was given an emergency appointment to the newly created position of Adjuster, G153 (which had formerly been classified as General Clerk, B222). Respondents allege on information and belief that Connolly had not theretofore taken any examination for any position falling within the classified civil service. This allegation is admitted in the answer.

"On July 27, 1938, the Commission gave notice of an examination for the position of Senior Inspector of Licenses, Class G154, restricting the examination to the persons who had theretofore been appointed to the abolished position of License Adjuster, G152. By this limitation, the Commission restricted the field of those eligible to take that promotional examination to Lawley, Burgess and Sheehy. Stated another way, the Commission provided for a promotional examination to fill the position in Class G154, restricting the field of those eligible to take the promotional examination to three men.

"Thereafter, on August 3, 1938, the Commission gave notice of an *open, non-promotional examination* to create an

eligible list for the other new class, Adjuster, G153. It was further provided that the examination might be taken by persons possessing either of the following qualifications:

"1. One year of first-class experience, within the past eight years, in the investigation and adjustment of accounts and the investigation of claims, assets and attachable property in connection with such accounts, or in general office procedure; or

"2. Permanent employees of the Tax Collector's office falling within classes of General Clerk, General Clerk-Stenographer, or in the old class of Deputy.

"The notice for this examination also provided that those falling within Class 2, *supra,* might receive a rating of not to exceed one hundred out of a total of one thousand points for ascertained merit in City and County service.

"It was the action of the Commission in thus providing for an open non-promotional examination for License Adjuster, G153, that led respondents to file an application for a writ of mandate to compel the Commission to make the examination promotional in character. It should be noted that respondents do not seek to invalidate the action of the Commission in declaring the examination for Class G154 promotional, nor its action in reclassifying the various positions. They do not charge that the Commission was without right to appoint Burgess and Sheehy to positions in Class G152 in 1934, although five of the respondents were higher on the eligible list than were the two men appointed. Their attack is upon the action of the Commission in making the examination for the new class, G153, open rather than promotional. The other matters enumerated above are set forth for whatever bearing they may have on the question as to whether the Commission abused its discretion in noticing an open examination for Class G153.

"There seems to be no escape from the conclusion that the facts alleged in the petition and admitted in the answer demonstrate that the Commission abused the discretion conferred upon it by section 146 of the charter, *supra,* in noticing an open examination for the position in question. Although the Commission provided in the notice for the examination that persons who have had one year of first-class experience in general office procedure are qualified to take the examination, the Commission likewise determined that

it was impracticable to provide a promotional examination when there are eighteen employees of the Tax Collector's office who have had experience in office work in that office for from 'several years' to over twenty-three years. Several of these employees have had several years' experience in the Bureau of Delinquent Revenue and the Bureau of Licenses. Furthermore, seven of the eighteen were on the eligible list for the old position G152, five of them with ratings higher than Burgess and Sheehy who have been appointed to G153. That the duties of Class G153, here involved, are generally similar to that of old Class G152 is indicated by the fact that, in abolishing Class G152, the Commission provided that the three persons then occupying positions in Class G152 should automatically, without examination, hold positions in Class G153.

"The respondents also point out that the judgment here appealed from does not determine that the promotional examination must be limited to the eighteen General Clerks in the Tax Collector's office. The Commission, under the charter provision here involved, has wide discretionary powers in determining what groups shall be included within the class permitted to take a promotional examination, and what the qualifications of those desiring to take the examination shall be. If one year of first-class experience in general office procedure is a qualification for eligibility to the position of Adjuster, G153, there is a large number of persons in the civil service outside the Tax Collector's office earning less than the salary provided for Class G153 who are eligible for this examination. Even if it were impracticable to hold a promotional examination limited to the eighteen qualified employees of the Tax Collector's office, it is obviously not impracticable to hold such an examination among the large group of civil service employees with the requisite qualifications.

"Another factor which tends to show an abuse of discretion is that the Commission has provided a promotional examination for Class G153 to Class G154, although, as described by the Commission, the distinction between the duties of those two classes is greater than between old Class G152 and new Class G153, and, although there are but three persons eligible to take the promotional examination for Class G154.

██ "Upon the showing made by respondents in their petition, and the admissions made by appellants in their answer and amended answer, the trial court correctly held that respondents established a *prima facie* case of abuse of discretion. This placed on the Commission the burden and duty of bringing forth any explanation it might have by way of defense. The Commission has offered no reasonable explanation or justification for its actions in either its pleadings in the trial court or in its briefs filed in this court. ██ It takes refuge in the proposition that local administrative boards should be permitted to operate with as little interference as possible from the judicial branch of the government. They cite cases for the rule that administrative action of local boards is beyond judicial control unless abuse of discretion is clearly shown. (*Maxwell* v. *Civil Service Commission,* 169 Cal. 336 [146 Pac. 869] ; *Pratt* v. *Rosenthal,* 181 Cal. 158 [183 Pac. 542] ; *Mann* v. *Tracy,* 185 Cal. 272 [196 Pac. 484] ; *Mitchell* v. *McKevitt,* 128 Cal. App. 458 [17 Pac. (2d) 789].) We may agree with these principles but still come to the conclusion that the Commission has abused its discretion in the instant case. The Commission has wide discretionary powers in many of its fields of operation. However, such commissions have only such powers as are conferred upon them. When they exceed or abuse their powers it is not only within the power, but it is the duty of the judicial branch of the government to prevent such excess or abuse upon the petition of those adversely affected. Here the people of the City and County of San Francisco have seen fit to insert in section 146 of the charter, *supra,* a provision requiring the Commission 'Whenever it deems it to be practicable' to give promotional and not open examinations. This provision embodies one of the fundamental concepts of a sound civil service system. All authorities agree that promotions are an essential of a sound civil service system. ██ The purpose of civil service is twofold—to abolish the so-called spoils system, and to increase the efficiency of the service by assuring the employees of continuance in office regardless of what party may then be in power. Efficiency is secured by the knowledge on the part of the employee that promotion to higher positions when vacancies occur will be the reward of faithful and honest service. Provisions such as section

146 of the charter, that promotional examinations shall be held when practicable, are intended to promote efficiency among public employees. (*People* v. *Errant*, 229 Ill. 56 [82 N. E. 271] ; *Ptacek* v. *The People*, 194 Ill. 125 [62 N. E. 530].) Its provisions are mandatory, and must be complied with.

 ''Section 146 of the charter, *supra*, constitutes a limitation on the discretion of the Commission. Where it is practicable to hold a promotional examination, such examination must be given. In determining whether it is practicable to give such an examination the Commission has not an uncontrolled discretion. If such an examination is not to be given, a valid reason why not, must exist. When the Commission's action is challenged, and the petitioner produces a *prima facie* case that a promotional examination is practicable, the burden is on the Commission to justify its action.

''There appears to be but little case law on the exact problem here presented. The diligence of counsel, and independent research by this court, have unearthed but two cases where the problem has been passed upon directly by the appellate courts in this country. Both of these cases are in accord with the views herein expressed—in fact, in some respects, they go beyond the holding in this opinion.

''In *People* v. *Errant, supra,* the Supreme Court of Illinois was presented with the following facts: The Chicago Civil Service Commission proposed to hold an open competitive examination instead of a promotional one for the position of Assistant Superintendent of Streets. Those next lower in rank contended that, under the civil service act and rules adopted pursuant thereto, a promotional examination should be given. The civil service act there involved provided that the Commission 'shall provide, in all cases where it is practicable, that vacancies shall be filled by promotion'. This is substantially the same language used in the old charter of San Francisco (sec. 8 of art. XIII, *supra*), and in section 146, *supra,* of the present charter. In interpreting the Illinois section the court stated (p. 274) : 'The phrase in section 9 above quoted, ''in all cases where it is practicable,'' adds but little to the meaning of the section, and takes little or nothing from it. If this phrase was eliminated entirely from the statute, it would mean substantially the same as it does with it in. The meaning in both cases is that the vacancies are to be filled by promotion. If this is not possible, the

office is not to remain vacant and the wheels of government stop; but the place is to be filled in another way and the functions of the government go on. In the case before us the determination of appellees that it was not practicable to fill the place by promotion should not precede, but come after, a promotional examination, where it is their duty to hold such examination. There are, it is admitted, at least 15 ward superintendents who are ready and willing to take the promotional examination for the position to be filled. If the examination is held, and two or more ward superintendents qualify, then it will be practicable to appoint the one making the highest grade. Until such examination is held, and these persons given a chance to pass, the appellees cannot know whether it is practicable to fill the place from the ward superintendents. The only prayer of the petition is that appellees be required to hold such promotional examination. This, we think, it is their clear legal duty to do.'

"A similar conclusion was reached by the same court in *Ptacek* v. *The People, supra.* That was a proceeding in *quo warranto* brought to test the legal right of Ptacek to hold the position of Assistant Superintendent of Police, an office to which he had been appointed after having participated in an open examination held by the Commission. It was contended that the examination had been improperly and unlawfully held in that it should have been a promotional and not an open examination. The civil service act in question contained the same clause as is quoted in the Errant case, *supra.* The court held that a promotional examination was required, although there were but five men eligible to take a promotional examination. In so holding, the court stated (p. 132): 'We do not understand how the civil service commission could, under its rules, hold an original examination for the position of Assistant Superintendent of Police unless it is shown in some way that the vacancy in that office could not be filled by promotion, and this, we think, the pleas wholly failed to do.'

"In the briefs of the parties to this appeal a decision of Honorable Emmet H. Wilson, Judge of the Superior Court of Los Angeles County, in the case of *Crowe* v. *Board of Civil Service Commissioners*, L. A. No. 427,601, is quoted in full. That case involved the question as to whether an examination for City Treasurer should be open or promotional, under charter provisions similar to those involved in the two

Illinois cases, *supra.* The Commission pleaded that it had conducted an investigation as to the qualifications of all the employees of the City Treasurer's office, and all other classifications in the civil service, and after such investigation had found that it was not practicable to fill the office by promotion. Nevertheless, the court granted the petitioners a judgment on the pleadings. It held that the provisions of the charter in reference to promotional examinations were mandatory, and that, if there were qualified persons in the service eligible to take the examination, the Commission could only ascertain that it was impracticable to give a promotional examination after those eligible had been given such an examination.

"The reasoning of these three cases is conclusive here. Under the provisions of section 146 of the charter, *supra,* promotional examinations, except for those in the lowest ranks, are required to be held unless they are not 'practicable'. In determining that fact the Commission does not possess unlimited discretion. There are doubtless many situations where it would be impracticable to give a promotional examination, and where the Commission could determine that an open examination was proper. But the facts of the instant case demonstrate that this case does not fall within that category. Here the Commission has determined, by fixing the qualifications as a condition precedent for the taking of the examination, that the eighteen petitioners, as well as many others, are fully qualified to take the examination, and, if they pass, fully qualified to fill the position. If there are large numbers of persons in the service fully qualified to take the examination for the eligible list for the position in question, how can the Commission determine before it gives a promotional examination to those persons, that it is not 'practicable' to give such an examination? Obviously, under such circumstances, to so determine is an abuse of the discretion vested in the Commission."

The judgment is affirmed.